**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  CR 07-00030 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 59] |
| GUSTAVO AGUILAR and FERNANDO AGUILAR, | |
| Defendants. | |

## INTRODUCTION

Before the Court is defendants Gustavo Aguilar's and Fernando Aguilar's Motion and Declaration in Support of Subpoena for Documents Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure (the "Motion") [Docket No. 59].  For the reasons discussed below, the Court DENIES the Motion.

## BACKGROUND

**I.  Events Leading to Arrest**

The Aguilars are each charged with one count of conspiracy to possess with intent to distribute and distribution of methamphetamine in violation of 21 U.S.C. § 846, and two counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1).  *See* Docket No. 10 (Indictment filed January 18, 2007).

In October 2006, an incarcerated confidential informant ("CI"), whom both parties refer to as "Dave," contacted an ATF agent regarding "illegal narcotic/firearm transactions being conducted by" the Aguilars.  Docket No. 1 at 3 ¶ 4 (Compl.).  The CI told the agent, he had purchased a pound of cocaine from the Aguilars in August 2006 for $17,000.  *Id.* at 3-4 ¶ 5.  The CI told the agent he met them through his friends, Sergio and Tony Espinola.  Docket No. 50 at 3:10-11 (Resp. to Mot. by USA as to Fernando Aguilar, Gustavo Aguilar Consolidated Resp. to All Def. Mots. Pertaining to Informant Issues).  They had a sister married to Fernando Aguilar.  *Id.* at 3:11.  Sergio introduced the CI to Fernando because the CI was looking for help with his financial problems.  *Id.* at 3:12-13.

The Espinolas knew the Aguilars were involved with drugs, though they themselves were not. *Id.* at 3:13-14. The CI apparently had been arrested by local authorities and said he "would be willing to do anything [he] could to help [himself] out." Compl. at 3 ¶ 4. The ATF agent said he would speak with the District Attorney, but could make no promises, and the CI said he understood.[1] Compl. at 3 ¶ 4.

In October 2006, the CI allegedly bought a kilo of cocaine from the Aguilar brothers for $17,000.[2] Docket No. 50 at 3:15. The agent asked the CI if he could set up another deal, and he said he would try. *Id.* at 3:15-16.

On November 22, 2006, the CI and Fernando met at a Mexican restaurant in Modesto, California. *Id.* at 3:17-18, 4:12-13. After leaving, the government asserts Fernando showed the CI seven to ten large slivers of apparently methamphetamine and they discussed arranging a purchase on November 30, 2006. *Id.* at 4:14-22. On that date, according to the government, Gustavo and Fernando met with the CI in the parking lot of a retail store in Byron, California, where the CI purchased methamphetamine for $12,000. *Id.* at 4:23-5:5.

On December 6, 2006, the CI met with Fernando and Gustavo again to discuss a transaction for 20 pounds of methamphetamine, a kilo of cocaine, and a gun. *Id.* at 5:7-10. At this meeting the CI brought along an undercover Drug Enforcement Agent named Waleed Arabshahi. *Id.*

On December 15, 2006, the CI met Gustavo in a movie theater parking lot in Pittsburg, California, where Gustavo purportedly showed the CI the 20 pounds of methamphetamine. *Id.* at 5:1-7. Gustavo was immediately arrested. *Id.* at 5:7-8. Later in the day, Fernando was arrested at his place of business. *Id.* at 5:8-9. Both their houses were searched. *Id.* at 5:9-10. No contraband was found at Fernando's house, but marijuana, methamphetamine, and paraphernalia were discovered at Gustavo's. *Id.* at 5:10-11.

///

---

[1] According to the agent, who did speak with the District Attorney, the CI received no benefit in his county matter for his work in this matter. Docket No. 50 at 3:7-9. The agent did pay the CI $500 for his work in this matter. *Id.* at 3:9.

[2] There is no evidence to suggest this was done at the agent's direction.

2

**II.     Procedural History**

The Aguilars have asserted an entrapment defense, and have sought the CI's identity and address. Docket No. 40 (Mot.) at 6:14-15. According to them, the CI "is the origin of the investigation culminating in [their] arrest," as he "provided alleged information about them while in custody on another offense." Docket No. 40 (Mem. of P. & A.) at 3:26-4:1. As a result, each "defendant disputes material portions of the reported allegation made against him by said informant." *Id.* at 4:1-2.

On April 16, 2007, the Aguilars' counsel sent a subpoena to Sprint Spectrum Carrier ("Sprint") to produce "records related to telephone (925) 864-5803/Sprint Spectrum Carrier CBR (925) 777-1013 for the time period of June 2006 through December 2006." The subpoena directed Sprint to produce the records to the Clerk of the Court by May 22, 2007. Counsel sent a letter with the subpoena directing Sprint to contact her upon receipt to discuss waiving their appearance at the next court date.[3] On May 15, 2007, the Clerk of the Court received a CD from Sprint. As the Clerk had no order for the subpoena, it held the CD, and to-date, has not released it.

On August 15, 2007, the Aguilars filed six motions, including motions to disclose the CI's identity (the "CI Disclosure Motion") [Docket No. 39] and to produce impeachment evidence regarding him held by the government (the "Impeachment Disclosure Motion") [Docket No. 40]. On November 28, 2007, the Court issued an order [Docket No. 56], ruling, in regards to the former motion, the United States would produce to the Aguilars, at least seven days prior to trial, the identity of its CI and certain types of impeachment evidence regarding him. *Id.* at 8:11-12. In regards to the latter motion, the Court granted the Aguilars' request in regards to some categories of information, but denied their request in regards to other categories. *Id.* at 8:22-11:19.

On December 21, 2007, the Aguilars filed their Motion and Declaration in Support of Subpoena for Documents Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure (the "Motion"), *see* Docket No. 59, and they filed a motion for the Court to reconsider its partial denial of the Impeachment Disclosure Motion (the "Motion to Reconsider"), *see* Docket No. 58.

---

[3]     In the Motion, counsel does not explain what this means.

3

The Aguilars filed the Motion, under Federal Rule of Criminal Procedure 17(c) and Criminal Local Rule 17-2, requesting the "release of all telephone records related to telephone number (925) 864-5803/Sprint Spectrum Carrier CBR (925) 777-1013 for the time period of June 2006 through December 2006, to be copied and produced to counsel." Mot. at 1:23-28. According to the Motion, the Aguilars allegedly provided these numbers to their attorneys "as numbers associated with a party involved in this case." *Id.* at 2:10-12. However, they "do not know if this is the informant or not." *Id.* at 12. "Revelation of the requested records will be meaningful to potentially locating and identifying the informant, and to the ultimate defense of entrapment at trial." *Id.* at 12-15.

Specifically:

> Defense counsel reasonably believe that such telephone numbers and the calls documented on their records will corroborate that there were multiple contacts between informant(s) and defendants creating their entrapment, that were *not monitored* and *unknown* to law enforcement. This is relevant to lack of predisposition, a central element of the entrapment defense.

*Id.* at 3:16-22 (emphasis in original).

Further, the Aguilars contend this information is essential to support their disclosure rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and to effective counsel under the Sixth Amendment. *Id.* at 3:13-26. "Specifically, the information requested is material and relevant for: a) The effective and proper preparation and presentation of the defense of entrapment; b) Proper cross-examination and impeachment of a prosecution witnesses; [and] c) Discovery of additional, admissible evidence." *Id.* at 4:2-8.

Finally, counsel declared that "defendants respectfully submit the subpoena and declaration, requiring the listed entity *to produce* the records described . . ." *id.* at 4:15-17 (emphasis added), and attached a blank subpoena form to the Motion. *Id.* at 5-6. Counsel failed to mention, however, that defendants had already issued an unauthorized subpoena to Sprint for the requested records.

A hearing for the Motion and the Motion to Reconsider were set for January 15, 2008, *see* Docket Nos. 58-59. It had to be successively continued, however, to July 29, 2008, due to a lengthy homicide trial involving the Aguilars' counsels, *see* Docket Nos. 61, 66, 68-69; and, to allow the

4

parties adequate time to prepare their cases and the Court adequate time to review and consider both lengthy substantive motions, *see* Docket Nos. 73, 79, 82. During this period, at the parties' request, the Court referred this matter to Magistrate Judge Brazil for plea negotiations. *See* Docket Nos. 70-72.

On July 29, 2008, the parties appeared in Court and resolved the issues related to the Motion to Reconsider. As for the Motion, the Aguilars' counsel advised the Court that the Clerk had called them and informed them that the records from Sprint had been received. Counsel also said they had filed a declaration which addressed the Court's concerns with the Motion.[4] And, they asked the Court to grant the Motion, so the Aguilars could access the records. The Court advised counsel to e-file a proposed order.

**LEGAL STANDARD**

Federal Rule of Criminal Procedure 17(c) states:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c).

Criminal Local Rule 17-2 states:

> No subpoena in a criminal case may require the production of books, papers, documents or other objects in advance of the trial, hearing or proceeding at which these items are to be offered in evidence, unless the Court has entered an order pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure.
>
> (1) An order permitting issuance of a Rule 17(c) subpoena may be obtained by filing either a noticed motion pursuant to Crim. L.R. 47-2 or, for good

---

[4] A subsequent check of the docket failed to locate any such declaration filed with the Court. Further, prior to July 29, 2007, the Court had not advised counsel whether it was inclined to grant or deny the Motion.

cause, an ex parte motion without advance notice to the opposing party.... A party requesting a subpoena must support its request by a declaration specifying the facts supporting the issuance of the subpoena along with a proposed order.

(2) The Court will determine whether the material sought should be produced. In issuing an order granting the motion, the Court may place limits on the scope of the requested production.

N.D. Cal. Crim. L.R. 7-2.

As the Supreme Court has held, Rule 17 provides "for the usual subpoena ad testificandum and duces tecum, which may be issued by the clerk, with the provision that the court may direct the materials designated in the subpoena duces tecum to be produced at a specified time and place for inspection by the defendant." *Bowman Dairy Co. v. U.S.*, 341 U.S. 214, 220 (1951). In relation to Rule 16, however, Rule 17(c) was not "intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." *Id.* at 219-20. As such, Rule 17(c) encompasses requests for any material used before a grand jury, leading to a criminal trial, or used at trial, itself. *Id.* at 221. "In short, any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena." *Id.*

In addition, however, under Rule 17(c), a party may request a court issue a subpoena duces tecum, for the production of documents, to a non-party. *U.S. v. Nixon*, 418 U.S. 683, 687-88, 699 n.12 (1974) (subpoena issued to unindicted co-conspirator). As the *Nixon* court held, however:

[I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevent [sic]; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Nixon*, 418 U.S. at 699-700 (footnote omitted).

In order to carry this burden, a moving party "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700; *see also United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984).

**ANALYSIS**

As discussed below, because the subpoena request seeks both relevant and irrelevant evidence, and because it is vague and unspecific, the Court DENIES the Motion.

**I.     Relevancy:  The subpoena seeks relevant as well as irrelevant evidence.**

Here, the Aguilars make a partial showing of relevance, as they seek evidence documenting the CI's conduct after he contacted the government's agent in October 2006, but allegedly done without the government's knowledge.  But, to the extent they seek evidence of the CI's telephone records which preceded any government association, they seek evidence irrelevant to their case. Under Federal Rule of Evidence 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  The Supreme Court analyzed this concept, in a Rule-17(c) analysis, in *Nixon*, where a grand jury indicted seven individuals for various offenses, including conspiracy to defraud the United States and to obstruct justice, *Nixon*, 418 U.S. at 687.  It also named President Nixon as an unindicted coconspirator.  *Id.*

A special prosecutor then sought production, via a subpoena duces tecum, under Rule 17(c), of documents and of tapes made by the President of his meetings with certain persons.  *Id.* at 688. The prosecutor identified the time, place, and persons present for these meetings.  *Id.*  The Supreme Court affirmed the district court's finding of relevancy, because even though the prosecutor could not fully describe the contents sought, he demonstrated "there was a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment."  *Id.* at 700.

Specifically, he:

offered the sworn testimony or statements of one or more of the participants in the conversations as to what was said at the time.  As for the remainder of the tapes, the identity of the participants and the time and place of the conversations, taken in their

///

7

> total context, permit a rational inference that at least part of the conversations relate to the offenses charged in the indictment.

*Id.*

In other words, looking at Federal Rule of Evidence 401, the prosecutor showed the recordings had a tendency to make the existence of any facts of consequence to the determination of the conspiracy's operations more probable or less probable than it would have been without them.

In this case, the Aguilars have done this in part, but not entirely. They have requested telephone records for two telephone numbers, "for the time period of June 2006 through December 2006," so they may "corroborate that there were multiple contacts between informant(s) and defendants creating their entrapment, that were *not monitored* and *unknown* to law enforcement." Mot. at 1:27, 3:16-20 (emphasis in original).

"Entrapment is the conception and planning of an offense by an officer, and his [or her] procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer." *Sorrells v. U.S.*, 287 U.S. 435, 454 (1932). Entrapment may occur when an undercover agent, a confidential informant, or a private citizen knowingly acts at the direction of government agents. *Jacobson v. United States*, 503 U.S. 540, 543-44 (1992) (undercover agent); *Mathews v United States*, 485 U.S. 58, 60 (1988) (private citizen); *Hampton v. United States*, 425 U.S. 484, 485, 490 (1976) (same); *United States v. Russell*, 411 U.S. 423, 424 (1973) (undercover agent); *Sherman v. United States*, 356 U.S. 369, 373-76 (1958) (confidential informant); *Sorrells*, 287 U.S. at 439 (undercover agent).

It is not necessary for the government to expressly request assistance. *Sherman*, 356 U.S. at 821-22 (entrapment for unpaid informer out of custody and awaiting sentencing, and having previously instigated two prior prosecutions for agents, to set up sale *on his own*, then contact agents to arrest buyer at sale). But, *where there is no government involvement, there can be no entrapment.* *United States v. Thickstun*, 110 F.3d 1394, 1398 (9th Cir.1997); *United States v. Martinez*, 979 F.2d 1424, 1432 (10th Cir. 1992) (joining the D.C., 1st, 4th, 5th, 7th, 8th, 9th, and 11th Circuits requiring "some showing of conduct by government agents which has induced the accused to commit the

///

charged offense");[5] *United States v. Emmert*, 829 F.2d 805, 808-09 (9th Cir. 1987); *United States v. North*, 746 F.2d 627, 630 (9th Cir.1984), *cert. denied*, 470 U.S. 1058 (1985); *United States v. Beverly*, 723 F.2d 11, 12 (3d Cir. 1983) ("[T]he law of this and several other Circuits [is] that an entrapment defense cannot be predicated on the actions of a party who has not agreed explicitly or implicitly to help the government make its case against the person who complains of entrapment").

Thus, from a relevancy standpoint, it is reasonable for the Aguilars to seek telephone records documenting the CI's conduct, which occurred after his contacts with the government commenced, but without the agent's knowledge, much as the CI in *Sherman* did. In contrast, however, it is unclear that acquiring information concerning the CI's telephone communications *prior to October 2006, when he first contacted the agent*, would be relevant to any such showing of entrapment. Thus, while the Aguilars have sought some relevant evidence here, they have not demonstrated the relevance of all of the evidence they seek.

**II.     Admissibility: The subpoena seeks admissible evidence, in part.**

The Aguilars seek telephone records for three uses: (1) to prepare and present their entrapment defense; (2) to cross-examine and impeach prosecution witnesses; and (3) to discover further admissible evidence. The first intended use of the telephone records, is apparently an admissible one, to the extent they are *relevant, see infra* discussion in part I, and otherwise pass muster under the Federal Rules of Evidence.

The second intended use, however, is apparently an inadmissible one. Impeachment statements are not admissible as such, until impeachable testimony has been adduced at trial. Thus, "[t]his use is generally insufficient to justify the *pretrial* production of documents," under Rule 17(c). *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) (emphasis added) (citing to *Nixon*, 418 U.S. at 701); *U.S. v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) (denying impeachment-seeking subpoena as seeking inadmissible evidence).

///

---

[5]     The First Circuit has since held there may be situations where this is not so, such as where the government induces a private middleperson to entrap a defendant. *United States v. Luisi*, 482 F.3d 43, 55 (1st Cir. 2007).

Lastly and likewise, the third intended use is apparently an inadmissible one. A Rule 17(c) subpoena is not a discovery device justifying a fishing expedition. *Bowman Dairy Co. v. U.S.*, 341 U.S. at 219-20. It is merely a device to expedite discovery which is available under Rule 16. *Id.* Nonetheless, to the extent the Aguilars seek the telephone records for the first intended use they are admissible to the extent they are relevant and otherwise pass muster under the Federal Rules of Evidence.

**III.    Specificity: The Subpoena is not specific.**

The requirement of "specificity" under Rule 17 is not satisfied if a defendant does not know what the evidence consists of or what it will show. *See United States v. Arditti*, 955 F.2d 331, 346 (5th Cir. 1992). Likewise, a defendant's "mere hope" the documents will produce favorable evidence will not support the issuance of a subpoena. *United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996). Courts will generally find the use of broad requests, such as for "all files" or "all records" pertaining to a given subject, not sufficiently specific. *See Reed*, 726 F.2d at 577. The less specific a subpoena, the greater the likelihood defendant is engaged in a fishing expedition or using their subpoena for discovery purposes. *See id.*

Admittedly, the Aguilars' request is relatively narrow. They seek records for two telephone numbers, from June through December 2006. Nonetheless, they do not indicate to whom these numbers belong, nor do they know what they will find in the requested records. They hope to uncover information about the CI, but they are uncertain this will occur. Further, although they seek to document "contacts" between the CI and themselves, they do not limit their request to calls from these numbers to their numbers, or explain why this is not possible. More importantly, *it is unclear why the Aguilars do not simply obtain their own telephone records*. As a result, they appear engaged in a fishing expedition. Thus, although their request is relatively narrow in focus and temporal scope, it is not sufficiently specific.

///
///
///
///

10

**CONCLUSION**

The Court DENIES the Aguilars' Motion and Declaration in Support of Subpoena for Documents Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure [Docket No. 59].

IT IS SO ORDERED.

August 1, 2008

                                              Saundra Brown Armstrong
                                              United States District Judge